CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

FEB 13 2014

JULIA C. DUDLEY, CLERK
BY: /s/ K. Dotson
DEPUTY CLERK

# United States District Court
## Western District of Virginia
### Harrisonburg Division

|  |  |
|---|---|
| JULIA E. SOUTER, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| WARREN COUNTY, VA., *etals,* | ) |
| | ) |
| *Defendants* | ) |

Civil No.: 5:13cv00061

**REPORT AND
RECOMENDATION**

By:  Hon. James G. Welsh
U. S. Magistrate Judge

Julia Souder, appearing *pro se.* instituted this cause of action against Warren County, its Board of Supervisors, its county attorney (Blaire Mitchell), its assistant county attorney (Dan Whitten), its zoning administrator (Eric Moore), and its county executive (Douglas Stanley).  In her "[Amended] Complaint/Motion for Judgment," Ms. Souter challenges the constitutionality of provisions in the Warren County ("County") zoning ordinance, which relate to the "Accumulation of Refuse" and to "Enforcement.  In addition, she alleges that as enforced she was denied due process (docket #4, pp 1-3, and #7, p 1).  In response the defendants have moved to dismiss pursuant to Rule 12(b)(6) and filed a supporting memorandum of points and authorities along with numerous attachments outlining the plaintiff's longstanding property-related disputes with the County.(Docket # 9 and 10)

A Roseboro Notice, with a deadline set for August 23, 2013, was sent to the plaintiff (docket #14), and this matter was then referred to the undersigned magistrate judge pursuant to

28 U.S.C. § 636(b)(1)(B) for proposed findings of fact and recommended disposition (docket # 15).

The plaintiff subsequently filed "Objections" to the defendants' motion (docket #29). In this somewhat rambling response, Ms. Souter argues that dismissal of her complaint is inappropriate for three reasons: because the state court had jailed her "with the <u>acquiescence</u> of the Defense;" because the state court had imposed an appeal bond requirement that effectively "precluded" her ability to seek any direct appellate review; and because the defendants had failed to "supervise the behavior and actions" of their subordinates.

In reply the defendants point-out that the plaintiff's imprisonment is a function of her own decision-making, not that of any defendant; similarly, they point-out that it is the plaintiff's own inaction, not any action by a defendant that is keeping her imprisoned. (Docket #30; #30-1, p. 1)They note that the state court's August 2013 order holding Ms. Souter in civil contempt and imposing a six-month jail sentence (docket #30-2), contains *inter alia* an express finding that Ms. Souter has persistently continued to violate its earlier November 2010 injunction (docket #10-6, pp 1-5), which ordered her to maintain her property in compliance with the County's zoning code. As additional support for their motion, the defendants point to the state court's detailed outline of the nature and extent of Ms. Souter's violations, the clean-up that would be required as a condition precedent to her early release, and the state court's authorization for a County clean-up of the property at the plaintiff's sole expense in the event on her inaction.

I.      **Summary and Recommended Disposition**

After a careful and mature consideration of the entire record and after having heard the views of the parties, including specifically the fact Ms. Souter's pleadings do not support a

plausible inference of any right to relief as to any of the defendants, and for the reasons that follow, it is RECOMMENDED that summary judgment be GRANTED in favor of all defendants, and that this case be DISMISSED WITH PREJUDICE WITHOUT LEAVE FURTHER TO AMEND and that it be STRICKEN from the court's active docket.

## II.     Standard of Review

### A.     Rule 12(b)(6)

To survive a Federal Rule of Civil Procedure 12(b)(6) motion, a complaint must allege facts that, when accepted as true, "state a claim to relief that is plausible on its face."*Ashcroft v. Iqbal*, 556 U.S. 662, 678(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). Further defined, a claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."*Id.*(citing *Twombly*, 550 U.S. at 556). Legal conclusions or conclusory statements do not suffice and are not entitled to the assumption of truth. *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, it is the court's obligation to "determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level."*Monroe v. City of Charlottesville*, 579 F.3d 380, 386 (4th Cir. 2009) (quoting *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009)) (internal quotation marks omitted).

Therefore, in making its determination whether to dismiss, the court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268(1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 268 (4th Cir. 2005).

3

In resolving a Rule 12(b)(6) motion, the court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss," *Bosiger v. U.S. Airways, Inc.*, 510 F.3<sup>d</sup> 442, 450 (4th Cir. 2007); however, the court may consider documents integral to the complaint or specifically referenced by it without converting the Rule 12(b)(6) motioninto onefor summary judgment. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322(2007).

In addition, pursuant to Rule 12(d),the court has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1366, at 159 (3<sup>d</sup> ed. 2004, 2011 Supp.); *see Kensington Vol. Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2<sup>d</sup> 431, 436-37 (DMd. 2011), *aff'd*, 684 F.3<sup>d</sup> 462 (4th Cir. 2012). And if the court considers such material, "the motion must be treated as one for summary judgment under Rule 56;" in which case "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Rule 12(d).

B.      **Special Consideration for *Pro Se* Litigants**

*Pro se* pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106(1976)); *accord Brown v. N.C. Dep't of Corr.*, 612 F.3<sup>d</sup> 720, 724 (4th Cir. 2010). *Pro se* complaints are entitled to special care to determine whether any possible set of facts would entitle the plaintiff to relief. *Hughes v. Rowe*, 449 U.S. 5, 9-10(1980). Nevertheless, *pro se* complaints must be dismissed, if they do not allege "a plausible claim for relief." *Forquer v. Schlee*, 2012 U.S. Dist. LEXIS 172330, *7 (DMd. Dec. 4, 2012) (citations and internal quotation

marks omitted). Thus, "[w]hile *pro se* complaints may represent the work of an untutored hand requiring special judicial solicitude, a district court is not required to recognize obscure or extravagant claims defying the most concerted efforts to unravel them." *Weller v. Dep't of Soc. Servs .for the City of Baltimore*, 901 F.2$^d$ 387, 391 (4th Cir. 1990) (citation omitted)

## III.   Plaintiff's Claim

In her amended complaint (docket #4), Ms. Souter seeks a declaratory judgment that section 180-19 of the Warren County (Virginia) zoning ordinance dealing with the "[a]ccumulation of refuse" and section 180-60 of the same ordinance dealing with "[e]nforcement" are unconstitutional. To support this contention , she sets forth both provisions *verbatim* and points to what she contends are the absence of necessary "definitions defined in the [ordinance]," the absence of "any minimums for enforcement," the absence of any defined cleanup "procedures" and the absence of any "rules governing" cleanup documentation. (Docket #4, pp 2-3) The plaintiff also claims that the phrase "which might endanger the Public Safety" in the ordinance's enforcement section is unconstitutionally vague and fails to define what constitutes "reasonable" notice. (*Id.* at 3)

Attached to the plaintiff's original complaint, and incorporated by reference in her amended complaint is a glut of letters, notices, pleadings and assorted submissions documenting both Warren County's longstanding (at least since 2010) efforts to get the plaintiff to cleanup her property and her vociferous complaints of persistent violations of her privacy, trespass and other personal rights.

In the style of plaintiff's amended complaint, in addition to identifying Warren County and its "Board of Supervisors" as defendants, she also names five county officials as defendants.

However, no cognizable wrongdoing is asserted against any one or more of these individuals; therefore, their designation as defendants is deemed to be in their respective official capacities.

## Defendants' Exhibits [1]

As previously noted, underpinning the case now before the court is a five-year struggle by Warren County to effect a clean-up of the plaintiff's property. This effort is documented by the defendants in exquisite detail in the form attachments submitted in support of their motion to dismiss. *Inter alia*, these include the county attorney's affidavit (docket #30-1), a surfeit of state court records (docket #10-3, #10-6, #10-7, #10-8, #10-12 and #30-2), and numerous photographic exhibits (docket #10-4, #10-5, #10-9, #10-10 and 10-11) illustrating the condition of Ms. Souter's property at various times. Also submitted by the defendants in support of their motion are charts illustrating the County's multi-year, multi-venue litigation history with Ms. Souter (docket # 10-1, #10-2 and #10-3 p 1), a history which includes two previous unsuccessful efforts on the plaintiff's part to seek relief through the federal court (*Souter v. County of Warren* 5:10cv00122-SGW, [2] and *Souter v, Comm. of Virginia*, 5:12cv00121-MFU). [3]

---

[1] In reviewing the motion to dismiss, the court may consider allegations in the complaint, matters of public ecord, and documents attached to the motion to dismiss that are integral to the complaint and authentic. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[2] In this action "arising out of a zoning dispute ... over the appearance of [her] property" and her eventual jailing for just under four months for contempt of court, Ms. Souter asserted a § 1983 claim against Warren County, various officials, employees and others. "Having identified no plausible injury, except for injury arising from the judgment of the [state court], Ms. Souter's complaint was dismissed *sua sponte* under the *Rooker-Feldman* doctrine. (5:10CV00122-SGW, docket #3)

[3] This action also arises out of Ms. Souter's zoning dispute over the appearance of her Warren County property and her eventual incarceration. In this instance, seeking monetary damages and other relief, "[t]he gravamen of [her] complaint is that she was unconstitutionally denied court-appointed counsel by the trial judge at the civil contempt proceeding" that resulted in her being jailed. Once again her effort to bring suit in federal court was dismissed *sua sponte,* this time on the basis of state judge's immunity for actions taken in his official capacity and on the basis of the sovereign immunity enjoyed by the Commonwealth of Virginia. (5:12cv00121-MFU, docket # 3)

Totaling more than 250 pages, these exhibits show in detail that in early 2008 Warren County obtained an injunction, later affirmed by the Virginia Court of Appeals, (docket #10-1 p. 4) directing Ms. Souter to clear her property located at 471 Apple Jack Circle, Linden, Virginia ("the property"), and imposing a suspended six month jail sentence (*Id.* at p 3) By November of the same year, the property was again junked; the suspended sentence was revoked, and she was jailed (*Id.* at p 4). This incarceration precipitated her first unsuccessful effort to invoke the federal court's jurisdiction. *See Souter v. Cnty. of Warren*, 5:10cv00122-SGW, 2010 U.S. Dist. LEXIS125893 (WDVa. Nov. 30, 2010).

In 2010, the saga of Ms. Souder's trashy property was renewed. In May and July, Ms. Souter received Notice of Violation letters informing her that she was not in compliance with the zoning laws (docket #10-4, pp. 6-10), and a couple of months later her adherence to waste management regulations was also questioned (docket # 10-4, pp. 6-8). In July the county took the zoning law non-compliance issue to court, requesting injunctive relief on the basis of Ms. Souder's continuing recalcitrance (docket # 3, pp. 1-5); however, by seeking multiple continuances and filing a plethora of motions (docket # 10-6, pp. 25-27, 27-28, 30, 32-38, 39-40, 41-42) this issue was not decided until entry of an Order of Injunction in November 2010 (docket # 10-6, pp. 6-10). Despite her multiple efforts to raise questions about validity of the injunction order, it has remained in full force and effect (docket #10-6, pp 6-7, 8-13, 23).

Consequently, in February 2011 when a clean-up of the property had not progressed, the state court authorized the County to clean it (docket #10-6, pp. 24-25). Once again Ms. Souder unsuccessfully objected (*Id.*, pp. 31-34 (part two), 35-36); the property was cleared; the debris was sold at public auction in June 2011 (*Id.* p 37), and the County's liens against Ms. Souter's climbed to $30,811.69 (docket #10-1, p 6).

Seemingly oblivious to this history ineffective recalcitrance, by September 2012 Ms. Souter's obedience was again in question, and the County felt compelled to file a motion for a rule to show cause. Over Ms. Souter's multitude of extraneous objections [4] the state court directed issuance of a rule, and the matter was later scheduled for a date in January 2013. (Docket #10-6, pp 42-52; #10-7, p 15). Instead of waiting for the state court's orderly consideration by of the rule on the scheduled hearing date in January, Ms Souter initiated a three-court initiative. She unsuccessfully attempted to appeal to the Virginia Supreme Court (docket # 10-7, pp 1, 9-13, 15; #12, pp 9, 13). Before the state trial court, she initiated demands for discovery and for the assistance of court-appointed counsel, and she continued to express her "vehement" objections the state court's issuance of the rule (docket # 10-7, pp 22-28). And as yet another forum before which to express her ongoing anger and distain for the actions of the County and the state court, she filed suit against both in federal court (*Souter v. Virginia*, 5:12cv00121 (WDVa. Nov. 20, 2012) (dismissed without service of process on the basis of sovereign immunity)).

After several continuances, on December 20, 2012 the state circuit court denied the plaintiff's several objections and demands and continued the hearing on the rule for another three months. (Docket #10-7, pp 31-32). Ignoring the content of the state court's order and unperturbed by her continuing lack of litigation success, Ms. Souter almost immediately filed a rambling, prolix and generally unintelligible objection that *inter alia* renewed her demand for the

---

[4] The plaintiff's objections included claims that the County's photographic evidence was "obtained by trespass," that she was "entitled to live on [her] property as [she] sees fit," that she was the victim of "prejudice" on the part of various County officials, that the state court had unconstitutionally "denied [her] counsel at all stages of this case," and that the applicable provisions of the County's zoning ordinance were impermissibly vague. (Docket # 10-6, pp 53-57).

court to appoint her a lawyer and her contention that the pertinent provisions of the zoning code were unconstitutional. (Docket #10-8, pp 1-14).After at least one additional continuance granted at Ms. Souter's request (docket #10-8, p 17), a hearing on the County's show cause rule was finally held on April 19, 2013.  At its conclusion she was found to have "continued to accumulate refuse, debris, inoperable vehicles, and other materials" on her property in violation of the zoning ordinance, to be in violation of the court's earlier order of November 16, 2010 to clean and maintain her property in compliance with ordinance, and to be in contempt of court. (Docket #10-8, pp  19-21).  She was ordered to clean-up the property by June 12 "to the satisfaction of the Zoning Administrator;" she was ordered to maintain it, thereafter, in compliance with the court's order and the zoning ordinance; any jail sentence for civil contempt was stayed until June 25, and she was informed that she was subject to a sentence of "six month[s] in ... jail." (*Id.*).

Seemingly unchastened by this development, Ms. Souter continued to file "objections" and "notice[s],"make "demand[s],"address miscellaneous inquiries to the court, and in writing voice her "expect[ation] ... [of receiving] proper repl[ies]" from the state court. (Docket #10-8 pp 22-24, 28-32, 37-39).  Most importantly, she persisted in her refusal to comply with the court order to clear her property of the trash and other debris.  Consequently, on July 8, 2013 a six-month jail sentence was imposed with its imposition stayed until July 15 in order to give the plaintiff one last opportunity to comply with the clean-up order. (docket #12, pp 2-5). Imposition of the sentence was subsequently stayed for an additional three weeks to give the plaintiff even more time to effect the required clean-up. (Docket #12, pp 10-12)  When this did not occur, Ms. Souter was finally jailed on August 10; however, in the window of calm before this occurred, Ms. Souter filed the action at hand (document 10-8).

9

## IV.    Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment

Relying on applicability of the Rooker-Feldman doctrine[5]and a general lack of subject matter jurisdiction, in their motion to dismiss, the defendants challenge the plaintiff's efforts to invoke federal court jurisdiction.    Additionally and alternatively, as support of their Rule 12(b)(6) motion the defendants invoke the Younger doctrine of abstention,[6]the zoning ordinance's presumptive validity,[7]the failure of the pleadings to meet even marginally adequate pleading requirements,[8]the principles of judicial and quasi-judicial immunity, [9]the qualified

---

[5]    Based on *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), this doctrine stands for the general principle that of all the federal courts, only the U. S. Supreme Court has appellate jurisdiction over state court judgments, and a litigant in state court must find a state court remedy, or obtain relief from the U.S. Supreme Court.

[6]    *Younger v. Harris*, 401 U.S. 37 (1971).The doctrine arising out of this case stands for the proposition that, except in extraordinary circumstances, the lower federal courts ought not hear civil rights tort claims brought by a person who is currently the subject of a criminal, quasi criminal, civil, or administrative matter arising from that claim in state court. *See Huffman v. Pursue, Ltd.*, 420 U,S, 592 (1975); *Middlesex County Ethics Comm'n v. Garden State Bar Assoc.*, 457 U.S. 423 (1982).

[7]    "A legislative zoning decision is presumed to be valid," and if that presumptive validity is challenged by probative evidence demonstrating that it was unreasonable, then "the governing body is required to produce sufficient evidence of reasonableness to make the issue fairly debatable. If the issue is fairly debatable, the local governing body's legislative zoning decision must be sustained." *Fairfax County v. Southland Corp.*, 224 Va. 514, 522-23, 297 S.E.2${}^d$718, 722 (1982).

[8]    Although it is well settled that the court is to construe liberally *pro se* pleadings,  *Hill v. Braxton*, 277 F.3${}^d$701, 707 (4${}^{th}$ Cir. 2002), and are "held to a less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94(2007), a *pro se* plaintiff's complaint must be held to certain minimal pleading standards, *Switzer v. Town of Stanley*, 2010 U.S. Dist. LEXIS 126430, *8 (WDVa. Dec. 1, 2010).  Under Rule 8(a), a complaint must include: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; (3) and a demand for the relief sought, which may include relief in the alternative or different types of relief; in addition, under Rule 10(a) and (b), a complaint must include a caption stating the names of the parties and its claims or defenses in numbered paragraphs.

[9]*See generally Felder v. Den Hartog*, 2011 U.S. Dist. LEXIS 27561 (EDVa. Mar. 17, 2011); *Lynch v. Spotsylvania County Bd. of Zoning Appeals*, 42 Va. Cir. 164, 166 (Spotsylvania, 1997),

immunity of government officials from suit,[10] and the doctrine of sovereign immunity. (docket #10, pp 6-20)

## V. Discussion

### A.

Ms. Souder's complaint, including its many attachments, can be liberally construed to be a assertion on her part that the County's efforts to enforce its zoning ordinance violated her perceived rights of privacy and to be left alone; however, to state a claim under § 1983 against a government official performing discretionary functions,[11]"a plaintiff must establish (1) that the defendant[s] deprived [her] of a right secured by the Constitution or laws of the United States and (2) that such deprivation was committed by a person acting under color of state law."*See, e.g., Bennett v. Monette*, 507 F. Supp. 2$^d$ 514, 517 (EDNC. 2007) (citing *Gomez v. Toledo*, 446 U.S. 635, 640(1980)). If such a claim is established, both county governments and their officials are *persons* acting under color of state law and subject to suit under § 1983. *See, e.g., Love-Lane v. Martin*, 355 F.3$^d$ 766, 782 (4th Cir. 2004).

If it is assumed *arguendo* that the plaintiff herein seeks to assert a cause of action against the five named County officials in their individual capacities (despite the absence of any allegation of wrongdoing on the part of any one or more of them), the doctrine of qualified immunity shields them from civil damages. Each was at the relevant time a government official performing zoning law-related discretionary functions. Their conduct is not alleged to violate

---

[10] *See Slattery v. Rizzo*, 939 F.2$^d$ 213, 216 (4th Cir. 1991).

[11] *Susko v. City of Weirton*, 2011 U.S. Dist. LEXIS 5450, *7, 13 (NDWVa. Jan. 20, 2011) ( city employee's oversight of zoning ordinance enforcement is a discretionary function) (*aff'd Susko v. City of Weirton*, 2011 U.S. App. LEXIS 17386 (4th Cir. Aug. 18, 2011).

any clearly established statutory or constitutional right about which reasonable person would have known. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).

The analytical steps required to make the determination as to whether the named County officials are entitled to qualified immunity are: (1) an inquiry into whether the plaintiff has alleged a deprivation of a constitutional right and (2) whether that right was clearly established at the time of the alleged violation. *Rogers v. Pendleton,* 249 F.3$^d$ 279, 286 (4th Cir. 2001). Under the pleadings,both for Rule 12(b)(6) purposes and alternatively under the facts as established for Rule 56 purposes, the actions of the individual defendants are shielded by qualified immunity.

The zoning ordinance is facially valid and enforceable. *Pendleton Constr. Corp. v. Rockbridge County,* 652 F. Supp. 312, 317 (1987) (Virginia law ... "provide[s] for the delegation of zoning authority to the Commonwealth's localities"). Contrary to the plaintiff's undemonstrated assertions, the ordinance is reasonable and neither arbitrary nor capricious. *See e.g., Schefer v. City Council of Falls Church,* 279 Va. 588, 596, 691 S.E.2$^d$ 778, 782 (2010). It bears a reasonable and substantial relation to the public health, safety, morals, or general welfare. *Id.* Its enforcement provisions, about which the plaintiff complains, were neither arbitrary nor capricious. *See Epperly v. County of Montgomery,* Va. App. 546, 553; 620 S.E.2$^d$ 125, 128 (2005). (a trial court in Virginia "may find a party in contempt for disobedience or resistance to any lawful process, judgment, decree or order of the court"). There is nothing either in the pleadings or in the record to suggest that the plaintiff was intentionally treated differently compared to others similarly situated. There is nothing in the pleadings or in the record to suggest that the removal and disposal of the trash and debris from the plaintiff's property or the related zoning law enforcement actions were undertaken other than in compliance with the zoning ordinance. Moreover, the state court possesses the authority to strike down zoning

decisions that are "arbitrary, capricious, discriminatory or illegal." *Trustees of McDonogh Educ. Fund & Institute v. Baltimore County*, 221 Md. 550, 158 A.2$^d$ 637, 645 (Md. 1960). And Ms. Souter's complaint contains no assertion that an effort to seek such relief in state court would not afford her a forum to rectify any such cognizable injury. Thus, she has failed to state a substantive due process claim that is plausible on its face. *See Sylvia Dev. Corp. v. Calvert County*, 48 F.3$^d$810, 829 (4th Cir. 1995) ("[T]he fact that established state procedures were available to address and correct illegal [zoning] actions ... belies the existence of a substantive due process claim.").

### B.

Although qualified immunity does not apply to municipal entities, *Owen v. City of Independence*, 445 U.S. 622, 649 (1980), nothing in the record suggests "the execution of a policy or custom" of the County that caused the violation of any constitutionally protected right of the plaintiff. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690-691 (1978) ("the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a [constitutionally protected] deprivation, [and] ... local governments ... may be sued for [such] deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels); accord *Board of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997) ("[L]ocal governmental bodies ... may not be held liable under § 1983 solely because [they] employ[] a tortfeasor.").

*Monell* and subsequent cases, thus, stand for the proposition that a plaintiff seeking to impose liability on a local governmental body under § 1983 must identify the locality's "'policy" or "'custom" that caused the alleged injury. *Id.* The plaintiff has failed to show such a cognizable

constitutional injury "proximately caused [either] by a written policy or ordinance, or by a widespread practice that is so permanent and well settled as to constitute a 'custom or usage' with the force of law." *See  McFadyen v. Duke Univ.*, 786 F. Supp. 2$^d$ 887, 954 (MDNC. 2011) (internal quotation marks omitted).

If one then assumes *arguendo* that the zoning enforcement efforts in the instant case violated one or more of the plaintiff's constitutionally protected rights, neither of the two independent grounds upon which the County itself might be held liable for its enforcement effort has been alleged or even suggested.  First, the record does not suggest that the defendant zoning administrator (Eric Moore) made the final decision to proceed with enforcement.  *See Vodak v. City of Chicago*, 639 F.3$^d$ 738, 747-748 (7th Cir. 2011) (holding that the city council's delegation of sole decisionmaking authority to the police superintendent to set the policy regarding mass arrests in demonstration situations was "consistent with ... state law as well as within the [locality's] ordinance").  In other words, the zoning administrator in the instant case was not in effct the county itsel; he was not its surrogate.  Second, even if the Board of Supervisors (the body with legislative immunity that enacted the zoning ordinance) [12] had not delegated authority to the zoning administrator with respect to the enforcement action about which The plaintiff complains, the record amply demonstrates that he simply enforced an already existing and facially valid zoning law. As performed, such acts are administrative, executive, or ministerial in nature, and such officials are entitled to receive the protection of qualified immunity. *Jodeco, Inc. v. Hann*, 674 F. Supp. 488, 494 (DNJ. 1987)

---

[12]*See e.g., Jodeco, Inc. v. Hann*, 674 F. Supp. 488,494 (DNJ. 1987.

**B.**

In their assertion of the Rooker-Feldman doctrine applicability, the defendants are invoking "a jurisdictional rule providing that lower federal courts generally cannot review state court decisions." *Holliday Amusement v. State of South Carolina*, 401 F.3$^d$ 534, 537 (4th Cir. 2005). Under this doctrine, federal district courts are barred "from considering issues already presented by a party and decided by a state court" and they are also"barred from hearing [c]onstitutional claims that are "inextricably intertwined with questions [so] ruled upon by a state court." *Id.* (quoting *Plyler v. Moore*, 129 F.3$^d$ 728, 731 (4th Cir. 1997) (internal quotation marks omitted). The defendant's reliance on the Rooker-Feldman doctrine, therefore, presents the question of whether Ms. Souder is seeking to have this court review the state court's zoning decision and thus pass upon the merits of that decision. *See Jordahl v. Democratic Party of Virginia*, 122 F.3$^d$ 192, 202 (4th Cir. 1997).

A federal claim is "inextricably intertwined" with a state court decision if "the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Allstate Ins. Co. v. W. Va. State Bar*, 233 F.3$^d$ 813, 819 (4th Cir. 2000). For that reason, under Rooker-Feldman "a party losing in state court is barred from seeking what in substance would be appellate review of the state court judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Brown & Root, Inc. v. Breckenridge*, 211 F.3$^d$ 194, 199 (4th Cir. 2000) (internal quotation marks omitted). Rooker-Feldman is therefore implicated "if in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render the judgment ineffectual." *Jordahl*, 122 F.3$^d$ at 202 (internal quotation marks omitted).

A review of the record herein, more than amply demonstrates that the Rooker-Feldman doctrine applies to this case, and as a consequence, this court does not have subject matter jurisdiction. Were this court to grant the plaintiff the relief she seeks, it would effectually overrule or otherwise nullify the multiple zoning-related decisions of the Circuit Court of Warren County (Virginia). Contrary to her bald assertion to the contrary, she has been provided due process. She has had ample opportunity, as part of the multiple state court proceedings, to raise and litigate any constitutional claims, privacy claims, and any other perceived zoning or enforcement issues.

Succinctly put, this action by the plaintiff in this court is the functional equivalent of an appeal from a state court decision; the Rooker-Feldman doctrine is applicable, and the state court's decisions must proceed through Virginia's system of appellate review, not the lower federal courts. The record before the court makes it patently evident that Ms. Souter's action was (and is) intended by her to be an effort to obtain federal court review of a series of adverse zoning enforcement decisions by the Warren County Circuit Court.

### C.

To the extent the plaintiff's action in this court can be arguably construed to be a claim of wrongdoing on the part of the state court judge in the performance of his duties, such a claim is foreclosed by absolute immunity. "[J]udges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Stump v. Sparkman*, 435 U.S. 349, 355-356(1978).

Implicitly, the plaintiff's claims against the individual defendants pertain to their conduct in initiating and advancing the zoning law enforcement action against the plaintiff is equally

foreclosed by the doctrine of prosecutorial immunity. "[I]n initiating a prosecution and in presenting the [s]tate's case, the prosecutor is immune from a civil suit for damages." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). Accordingly, plaintiff's claims against the county attorney, the assistant county attorney, the county executive, and the zoning administrator must be dismissed on the basis of absolute immunity.

## D.

The *Younger* doctrine of abstention also bars Ms. Souter's effort to seek injunctive or damage recourse in federal court. At its core, this doctrine stands for the proposition that attacks on state court determinations judgments should be pursued through state court appeals and federal courts ought not to inject themselves in ongoing state proceedings. *See Younger v. Harris*, 401 U.S. 37, 41-54(1971); *see also Heck v. Humphrey*, 512 U.S. 477, 486(1994) ("We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to ... actions that necessarily require the plaintiff to prove the unlawfulness of [her] conviction or confinement.").

In the instant case abstention under *Younger* is appropriate, given the absence of demonstrable bad faith or harassment on the part of any defendant and equally the absence of a patently invalid zoning ordinance (despite the plaintiff's assertion to the contrary).

> Stated simply, the *Younger v. Harris* doctrine holds that a federal court should abstain from interfering in a state proceeding, even though it has jurisdiction to reach the merits, if there is (1) an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides an adequate opportunity for the plaintiff to raise the federal constitutional claim advanced in the federal lawsuit.

17

*Moore v. City of Asheville*, 396 F.3<sup>d</sup> 385, 390 (4th Cir. 2005) (citations omitted). In the case now before the court the plaintiff's claim meets these criteria. She seeks to invoke federal jurisdiction to restrain an ongoing state civil law enforcement proceeding[13] instituted prior to this proceeding. Her action implicates zoning, an important and substantial state interest.[14]And by providing the plaintiff with all relevant procedural and substantive protections, including notice, an opportunity to respond, a contested hearing before a state court of general jurisdiction and multiple opportunities to rectify her non-compliance, she was provided more than "an adequate opportunity to raise the federal constitutional claim she seeks to advance in this federal lawsuit." *See.Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3<sup>d</sup> 156, 165 (4th Cir. 2008) (quoting *Moore v. City of Asheville*, 396 F.3<sup>d</sup> at 390 (4th Cir. 2005)).

## E.

The defendants' reliance of the failure to satisfy minimal pleading requirements is equally meritorious. Rule 12(b)(6) directs a federal court to dismiss causes of action that "fail to state a claim upon which relief can be granted."Rule 8(a)(2) provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," and "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

---

[13] Addressing the question of whether a state enforcement action was in fact *ongoing*, the Fourth Circuit has noted: "We continue to focus on *Younger's* policy of commanding federal restraint when the federal action is duplicative, casts aspersion on state proceedings, disrupts important state enforcement efforts, and is designed to annul a state proceeding. *Moore v. City of Asheville*, 396 F.3<sup>d</sup> at 394-395.

[14] "In extending *Younger* to prescribe abstention in favor of state civil actions, the Supreme Court in *Huffman* [Pursue, Ltd.], 420 U.S. 592 ... [(1975)] was mindful that the doctrine was originally applied to protect the state interests represented in criminal prosecutions. Consequently, it extended the *Younger* doctrine only to civil cases in which important state interests were at stake, such as a nuisance action." *Moore v. City of Asheville*, 396 F.3<sup>d</sup> at 393.

relief that is plausible on its face.'"[15] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007)). Although "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), ... [it] must at least meet a minimal threshold of plausibility." *Simmons v. Bank of Am., N.A.*, 2014 U.S. Dist. LEXIS 14775, *6 (DMd. Feb. 6, 2014) (internal quotation marks omitted).

Accepting "as true all of the factual allegations contained in the complaint" (including all of the plaintiff's related submissions), "draw[ing] all reasonable inferences [from those facts] in favor of the plaintiff," and holding her pleadings to less stringent standards than formal pleadings, the plaintiff's complaint nevertheless fails to state a plausible cause of action upon which relief may be granted. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3$^d$ 435, 440 (4th Cir. 2011) (citations omitted); *Monroe v. City of Charlottesville*, 579 F.3$^d$ 380, 385-386 (4th Cir. 2009), cert. denied, 559 U.S. 992(2010); *Simmons v. Bank of Am., N.A.*, 2014 U.S. Dist. LEXIS 14775 at *6.

In essence the plaintiff's complaint alleges only that the defendants violated her perceived license to the peaceable possession of her property irrespective of her abject failure and refusal to comply with the County's facially valid zoning ordinance. Her complaint contains no facts upon which suggest this court's jurisdiction. It sets forth no facts upon which to suggest the defendants (or any one or more of them) violated a right or protection afforded the plaintiff pursuant to the constitution or federal law. It provides no grounds for this entitlement, other than

---

[15] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

labels and conclusions. It presents no facts, and it provides no basis even to suggest a conceivable claim, let alone one that is *plausible*.

**F.**

Although as a general rule extrinsic evidence is not considered at the Rule 12(b)(6) stage, the Fourth Circuit has adopted an exception. Where a defendant attaches a document to its motion to dismiss, "a court may consider it in determining whether to dismiss the complaint, [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiff[] do[es] not challenge its authenticity." *American Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

Herein, under the defendants' Rule 12(b)(6) motion, matters outside of the pleadings have been presented. The plaintiff does not challenge the authenticity of any of the submitted documents. She is aware that these attached documents may serve as the basis for the motion to be considered as one for summary judgment. She is aware of the standard of review applicable to a motion for summary judgment, [16] and she has been given a reasonable opportunity to present all material that is pertinent to the motion. Moreover, the documents are not extraneous; no discovery prior to their utilization for summary judgment purposes is necessary, and their consideration "is likely to facilitate the disposition of the action.," 5 C Wright & Miller, *Federal Practice & Procedure* § 1366, at 165-166 (3ded. 2004, 2011 Supp.); *see Leftridge v. Matthews*, 2013 U.S. Dist. LEXIS 141320. *31-33 (DMd. Sep. 30, 2013).

---

[16] The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986). And in making this review a court must view the facts in the light most favorable to the non-moving party. *Id.* at 255.

Therefore, for purposes of this discussion the defendants' motion to dismiss will be treated as one for summary judgment and its proposed disposition will e considered as provided in Rule 56. *See e.g., Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.,* 109 F.3[d] 993, 995-996 (4th Cir. 1997).

In a nutshell, the relevant evidence in support of the grant of summary judgment in favor of the defendants is the many, many, pages of state court documents submitted by the defendants to demonstrate the County's multiple efforts (both administrative and court-directed) to get the plaintiff to remove the trash and debris from her property and the plaintiff corresponding recalcitrance and outright refusal to comply with facially valid court orders. The very nature of this evidence is neither susceptible to contradiction nor to some uncertainty, and for all practical purposes it is dispositive of the relevant facts. The plaintiff has submitted no factual basis upon which to predicate a claim either for damages or for injunctive relief, and there is no suggestion in the record that additional evidence of relevance would be gained from discovery. In short, there is not alternative version of the facts, and there is uncertainty. Accordingly, the defendants are entitled to summary judgment in their favor

## VI.   Proposed Findings of Fact

1. In compliance with Rule 12(d), all parties were given a reasonable opportunity to present all the material is pertinent to the motion to dismiss;

2. Special care was afforded to the plaintiff's *pro se* complaint in making the determination as to whether any possible set of facts would entitle the plaintiff to relief;

3. The plaintiff's complaint does not allege a plausible claim for relief;

4. The complaint alleges no wrongdoing on the part of any individual defendant, or the "Board of Supervisors" or any cognizable claim against the County, and their designation as defendants is deemed to be in their respective official capacities only;

5. On the basis of their facial validity and the fact that their validity was not challenged by any party, the documents submitted by any party in support or in opposition to the motion to dismiss are deemed to be valid;

6. The plaintiff's complaint fails to state a substantive due process claim that is plausible on its face;

7. There is an established state procedures available to the plaintiff to address and correct illegal zoning actions, and this availability contradicts the plaintiff's claim of the denial of substantive due process;

8. The plaintiff's complaint failed to state a § 1983 claim against Warren County; or any defendant not clothed with qualified or other immunity;

9. The plaintiff's cause of action filed in this court is in effect intended by her to be an appeal of a series of adverse zoning enforcement decisions by the Warren County Circuit Court;

10. Application of the Rooker-Feldman doctrine compels a finding that this court does not have jurisdiction to review decisions of the state court or to consider any other claims by the plaintiff, which are inextricably intertwined with the earlier state-court judgments;

11. The Younger doctrine of abstention is applicable to the plaintiff's complaint;

12. The plaintiff's complaint fails to satisfy minimal pleading requirements of Rule 12(b)(6);

13. The plaintiff's complaint fails to comply with the pleading requirements of Rule 8(a)(2);

14. The plaintiff's existing claims are futile, totally lacking in legal sufficiency, and there is no suggested basis in law or logic to grant any application by the plaintiff for leave further to amend;

15. The documents submitted by the various parties are not extraneous and may properly be considered for summary judgment purposes;

16. No discovery is necessary as a precondition to the use of any submitted documents for summary judgment purposes; and

17. All defendants are entitled to summary judgment in their favor and the dismissal of the plaintiff's action with prejudice.

18. Use of the documents for summary judgment purposes will facilitate the disposition of this action;

## VII, Directions to Clerk

22

The clerk is directed to transmit the record in this case immediately to the presiding district judge and to transmit a copy of this Report and Recommendation to the *pro se* plaintiff and all counsel of record.

## VIII.   Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties.   Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: This 18th day of February 2014.

/s/ James G. Welsh
United States Magistrate Judge